PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLARENCE SANFORD, | ) | |
| | ) | CASE NO. 5:11cv2360 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| LISA STEWART, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Regarding ECF No. 70] |

Before the Court is the Motion to Disqualify Plaintiff's Expert Report and Testimony filed by Defendants Sandra Flood, Denise James, Suzanne Moore, Cheryl Richards, Lisa Stewart and Adrienne Welfle ("Defendants"). ECF No. 70. Plaintiff opposes the motion.[1] ECF No. 71. Defendants filed a reply. The Court has been advised, having reviewed the record, the parties' briefs and the applicable law. For the reasons that follow, the Court denies Defendants' motion.

## I. Background

Plaintiff brought this civil rights action alleging Eighth Amendment violations stemming from the Defendants' allegedly deliberate indifference to "serious, urgent medical needs." ECF No. 1 at 2. Plaintiff, at all times relevant to the facts alleged in the Complaint, was a juvenile incarcerated at the Indian River Juvenile Correctional Facility (the "Facility"). ECF No. 1 at 3. He alleges that Defendants, nurses employed by the Facility, "refused to provide timely and urgent medical attention after receiving notice of Plaintiff's symptoms, and as a result Plaintiff [ ]

---

[1] Defendants' reply, ECF No. 72, was untimely filed and offers no additional insight. *See* Local Rule 7.1(e) (the moving party may serve and file a reply memorandum . . . in support of any non-dispositive motion within seven (7) days after service of the memorandum in opposition.")

(5:11cv2360)

became septic, contracted pneumonia, had to be hospitalized and undergo surgery."[2]  ECF No. 1 at 2.

Relevant to the instant matter, Defendants filed a Notice of Disclosure of Expert Witness, identifying Dr. Barbara Volk as their expert.  ECF No. 52.  Thereafter, Defendants submitted Dr. Volk's report to Plaintiff.  ECF Nos. 71 at 10; 61 at 5.  Plaintiff in turn disclosed his expert, Dr. Gina Suh, and submitted her expert report.  ECF No. 70-2.  Defendants thereafter moved the Court to exclude Dr. Suh's report on the basis that it was untimely (ECF No. 65), which the Court denied (ECF No. 66).[3]

Defendants now argue that Plaintiff's expert, Dr Suh, should be disqualified because she is not qualified to testify to: 1) nursing standards of care; 2) the standards for health care in correctional facilities or juvenile correctional facilities; or 3) Eighth Amendment deliberate indifference claims.  Defendants further allege Dr. Suh overly relied upon the Complaint when forming her opinion and was not provided all medical records.  ECF No. 70 at 2-7.  Plaintiffs maintain that Dr. Suh is qualified to offer expert testimony and her report complies with Fed. R. Evid. 702.  ECF No. 71 at 3.

## II.  Legal Standard

Federal Rule of Evidence 702(a) provides,

---

[2]  Plaintiff suffered an undiagnosed pelvic fracture.  ECF No. 71 at 2.  The parties disagree as to whether the fracture resulted in the septic infection.

[3]  Despite the Court's Order, Defendants persist in referring to Plaintiff's alleged "unjustifiable and untimely disclosure" of the expert report, and seek "the costs incurred with Plaintiff's untimely disclosure."  ECF No. 70 at 1, 10.  This request is denied.

(5:11cv2360)

> A witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The court acts as a "gatekeep[er]" and "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable...." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589,597 (1993).  *See also* *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994); *In re Commercial Money Center, Inc.*, 737 F.Supp.2d 815, 821 (N.D.Ohio 2010).  "The rejection of expert testimony is the exception rather than the rule...." *Id.* (quoting Fed. R. Evid. 702, Adv. Comm. Notes (2000)).  Applying these principles, the Court considers the parties' arguments.

### III.  Analysis

### A.  Whether Dr. Suh is Qualified to Testify to the Relevant Standards

#### 1.  Nursing Standards

Defendants in this action are nurses—they allege that nursing standards of care and training are "distinctly different from those of physicians."  ECF No. 70 at 3.  Thus, Defendants argue, Dr. Suh, a physician, may not provide an expert opinion on nursing standards of care. ECF No. 70 at 3.  Plaintiff contends that Defendants' argument "reflect[s] a mischaracterization of Dr. Suh's opinion and the issues her opinion seeks to address."  ECF No. 71 at 5.  Plaintiff

(5:11cv2360)

states that Dr. Suh's opinion is intended to explain when basic medical standards require nurses

to report patient symptoms to a physician, "a subject on which a physician . . . is qualified to

offer an expert opinion." ECF No. 71 at 5.  To this end, Plaintiff asserts,

> Dr. Gina Suh is a medical doctor with extensive training and experience in the
> diagnoses and treatment of sepsis, with particular expertise in the area of bone and
> joint infections.  Dr. Suh has provided an expert opinion as to what symptoms a
> physician must be informed of by frontline medical staff, including when these
> symptoms must be reported – a matter of central relevance to this case.  As a
> practicing physician in internal medicine and infectious disease with extensive
> experience working with and relying on a "care team" consisting of frontline
> nursing staff, Dr. Suh is eminently qualified to testify as to what patient symptoms
> must be reported by nursing staff to a physician, including when that information
> must be conveyed.  Such expert testimony is precisely the sort contemplated by
> Fed. Evid. R. 702 as "specialized knowledge" which would assist the trier of fact
> to understand a central factual issue of this case – whether and when Mr. Sanford
> manifested symptoms which a physician must be informed of by frontline medical
> staff, and whether Mr. Sanford's life would have been jeopardized had a doctor
> been timely informed of these symptoms.

ECF No. 71 at 3.

A review of the Complaint confirms that Plaintiff's theory of the case is that the

Defendants failed to properly notify the attending physician of Plaintiff's symptoms.  ECF No. 1

at 6-11.  Dr. Suh's expert report focuses on three items: 1) whether the underlying cause of

Plaintiff's sepsis was his pelvic fracture; 2) whether Plaintiff's symptoms were such that the

nurses should have notified a physician; and 3) whether, had Plaintiff seen a physician, his

fracture and infection would most likely have been diagnosed and timely treatment would have

prevented Plaintiff from going into septic shock.  ECF No. 70-2 at 2-6.

As an initial matter, the Court notes that a review of Defendants' expert report completed

by Dr. Volk reveals that she, too, appears to opine as to what Defendants refer to as "nursing

4

(5:11cv2360)

standards of care."  Dr. Volk's report states,

> Opinion: . . . . Further, the nursing personnel assessed him in a timely manner and provided appropriate treatment coinciding with Mr. Sanford's complaints.
>
> In summary, Mr. Sanford's records show that he was promptly and thoroughly evaluated and appropriately treated by nursing health care professionals whenever he requested care and/or complained of pain. . . . Furthermore, there is no reasonable expectation that, given his lack of subjective and objective signs and symptoms, nursing personnel could have anticipated an internal infection.  Lastly, the Defendant nurses' actions demonstrate they were never dilatory, negligent or indifferent in their care of Mr. Sanford.  To the contrary, the nurses' actions played a significant role in Mr. Sanford's ultimate recovery, and accordingly, rather than being condemned, they should be praised.

ECF No. 68-2 at 3, 5.  Defendants do not explain why their own physician expert witness seemingly waded into the "nursing standard of care" waters nor, given Defendants' categorization of Plaintiff's expert report as a rebuttal, how a report responsive to Dr. Volk's report would not likewise dampen from the same water.

Nevertheless, Plaintiff maintains that Dr. Suh's opinion addresses a more nuanced issue— not whether the nurses conformed to a nursing standard of care, but "what the medically appropriate interactions should be *between* frontline nursing staff and a physician, and what the medical standards require of those interactions."  ECF No. 71 at 6 (emphasis in original).  A review of Dr. Suh's report supports Plaintiff's argument — the bulk of Dr. Suh's report contains an opinion as to when the line is drawn between what a nurse is required to do and what a physician is required to do.  *See e.g.*, ECF No. 71-1 ("It is not appropriate for a nurse to make a diagnosis; that is the exclusive responsibility of a physician.").  If a physician is not permitted to testify as to the relationship between nurses and physicians because it involves an opinion about nurses, then a nurse would not be permitted to testify as to that same relationship because it

5

(5:11cv2360)

involves an opinion about physicians, resulting in a black hole of forbidden testimony.  Because

Plaintiff's allegations rest on the interplay of the duties of nurses and physicians, the Court

concludes that Dr. Suh's specialized knowledge will assist the trier of fact to understand the

evidence or to determine a fact in issue.  *See* Fed. R. Evid. 702.  Thus, Dr. Suh may testify

insofar as it involves the relationship of the duties between physicians and nurses.

### 2.  Correctional Standards

Defendants also contend that "[h]ealth care standards in correctional facilities and

juvenile facilities can be conspicuously different from standards of care provided at a medical

facility like the Stanford University School of Medicine where Dr. Suh is employed."  ECF No.

70 at 4.  Defendants further assert that there are "national organizations, such as the National

Commission on Correctional Health Care, that provide guidelines to assist correctional health

professionals with the treatment of their patients."  ECF No. 70 at 4.  Therefore, Defendants

argue, Dr. Suh is unqualified to testify as an expert because she does not have training or

experience in the area of correctional health care.  ECF No. 70 at 4.  Plaintiff argues that this

argument is relevant in determining the weight a jury might give her testimony but "has no

bearing on whether her opinion is admissible pursuant to Rule 702.  ECF No. 71 at 8.

The Sixth Circuit instructs that,

> Rule 702 should be broadly interpreted on the basis of whether the use of expert
> testimony will assist the trier of fact.  The fact that a proffered expert may be
> unfamiliar with pertinent statutory definitions or standards is not grounds for
> disqualification.  Such lack of familiarity affects the witness' credibility, not his
> qualifications to testify.

*Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500, 516 (6th Cir. 1998) quoting *Davis v.*

6

(5:11cv2360)

*Combustion Eng'g, Inc.*, 742 F.2d 916, 919 (6th Cir. 1984); *see also Brewer v. Cuyahoga Valley Ry. Co.*, 2004 WL 5508630, at *1 (N.D.Ohio Oct. 14, 2004).  Defendants do not cite legal authority in support of their argument that Plaintiff's expert is required to be familiar with correctional standards and the Court is unable to locate such authority.  Accordingly, the lack of familiarity with correctional standards may be raised by Defendants to attack the credibility of Dr. Suh, but will not disqualify her from the instant case. *See Daubert*, 509 U.S. at 597 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### 3.  Eighth Amendment Standards

Defendants argue that Dr. Suh "has no experience or understanding in civil rights litigation or what constitutes deliberate indifference to serious medical needs under an Eighth Amendment claim" and, thus, is not qualified as an expert.  ECF No. 70 at 4.  Defendants cite no legal authority to support their contention and the Court is unable to locate any on its own.  For the reasons explained, *supra*, the Court denies Defendants' motion to disqualify Dr. Suh based upon her inexperience in civil rights litigation.

### B.  Whether Dr. Suh Relied On Proper Materials

Defendants argue that "Dr. Suh overly relied on Plaintiff's Complaint when forming her opinion and was not provided all relevant medical records."  ECF No. 70 at 5.  In support, Defendants cite to Dr. Suh's deposition wherein she referred to Plaintiff being "carried by two other people," a description referenced in the Complaint but not, allegedly, in the medical

7

(5:11cv2360)

records, and her statements in her deposition that she never got the x-ray report and her inability

to locate the "telephone order."  ECF No. 70 at 7.

   Plaintiff asserts that the records were provided and reviewed by Dr. Suh, who was

deposed *via* telephone, and that "her deposition statements [indicating she did not have records]

were likely the product of confusion created by having to sort throughout a 1,200 page file during

a deposition in which the exhibit document was not directly presented to her."  ECF No. 71 at 9.

Defendants do not respond to this argument.

   The record does not clearly reflect whether Dr. Suh was unable to locate the telephone

order or if she never received it.  *See* ECF No. 70-1 at 17.  Without more, the Court cannot

conclude that Dr. Suh did not receive or review the telephone order, and the same will not be

grounds for disqualification.  The x-ray report exchange is as follows:

> Q:   Then the x-ray was done. It was your understanding that the x-ray was
>        completed that night?
> A.   Yes.
> Q.   Were you able to read the x-ray report?
> A.   I never got the report.
> Q.   You never got a copy of the report?
> A.   I never got a copy of that report, no.
> Q.   You indicated on page 7 that you reviewed all the medical records Bate
>        labeled MED1 to Bate label number 886.  Is that correct?
> A.   Ah, yes, but I never -- I don't think I ever found an x-ray report.  I -- There
>        were indications all over that -- that the x-ray was negative, but I never got
>        a copy of the actual report.
> Q.   I have a Bate label numbered MED000336, --
> A.   Okay.
> Q.   -- which was obtained --
> A.   336? Okay.  One second.
>                    . . . .
> A.   Okay.  I'm not finding 336 in -- in the file that I have here.
> Q.   Well, then, we'll just go with that, that you did not read that x-ray report.

8

(5:11cv2360)

ECF No. 70-1 at 15-16.

Although Plaintiff asserts that Dr. Suh was not presented with the document during her deposition, resulting in "confusion," the Court notes that Dr. Suh clearly states in her deposition, "I never got a copy of the actual report." ECF No. 70-1 at 16.  This alone, however, does not disqualify Dr. Suh as an expert.  Dr. Suh also stated that "I don't think I ever found an x-ray report.  I— there were indications all over that— that the x-ray was negative, but I never got a copy of the actual report." ECF No. 70-1 at 16.  Because there were numerous indications that the x-ray was negative, and Dr. Suh relies upon the fact of a negative x-ray, and not interpretations of the x-ray itself or conclusions drawn in the x-ray report, Dr. Suh's opinion is not "[in]complete" or "[in]accurate" as Defendants contend (ECF No. 70 at 7).  *See* ECF No. 70-2 at 4-5 (Dr. Suh's report generally discussing the ramifications of a negative x-ray).

Finally, although Dr. Suh, in her deposition, referred to factual allegations in the Complaint, she did not refer to these allegations in her expert report.  *See* ECF Nos. 70-1 at 13-14 (Dr. Suh's deposition testimony indicating that on November 28, 2007 " . . . at 3 or 5 p.m. when he was having severe pain and pain that was bad enough that he needed to be carried by two other people. . . ."); 70-2 at 2 (Dr. Suh's expert report referencing medical records documenting "multiple pain complaints . . . on November 28, 2007, including an entry a 5:15 pm on that date documenting that Mr. Sanford was brought to the medical clinic from recreation with 'severe left hip pain.'").  Thus, it cannot be said that Dr. Suh is unreliable because "her medical opinion, in part, [is based] on unsupported allegations presented in the Complaint rather than based upon a thorough review of Plaintiff's medical records," as Defendants allege.  Defendant's

9

(5:11cv2360)

motion to disqualify Dr. Suh is, therefore, denied.

### IV.  Conclusion

For the reasons stated above, the Court denies Defendants' Motion to Disqualify

Plaintiff's Expert Report and Testimony (ECF No. 70).


IT IS SO ORDERED.


    July 12, 2013                                        */s/ Benita Y. Pearson*         
              Date                                   Benita Y. Pearson
                                            United States District Judge